Case number 15-7035, Tamika Edmonds, Appellant v. Engility Corporation. Ms. Ralston for the Appellant, Mr. Murphy for the Appellant. Good morning. May I please support? My name is Rani Ralston. I am the attorney representing the Appellant, Tamika Edmonds. Ms. Edmonds was employed by International Resources Group, later Engility, for over nine years performing payroll and accounting duties. From October 2004 until March 2013, when she was notified that her physician had been allegedly eliminated, while she was out on protected medical leave under FMLA for the birth of a child. Despite significant undisputed facts and facts that were disputed, evidencing pretext and prohibited bias, the District Court granted Engility's motion for summary judgment and dismissed Ms. Edmonds' case. There are three issues that warrant reversal of the decision. The first being, Ms. Edmonds submitted undisputed direct evidence. It's undisputed that Ms. Numbers was the decision maker to eliminate Ms. Edmonds' physician. It's also undisputed that Ms. Numbers asked Ms. Edmonds how many times she was going to get pregnant in response to her. Well, what are the times of those two events? The times that the question... The two events you mentioned. Ms... The decision about the employment and the question about how many times you're going to get pregnant. Ms. Numbers testified that she made the decision to eliminate Ms. Edmonds' physician in January of 2013. This conversation took place around, I believe it was in May or April. Of the prior year. Yes. Yeah. Previously. It is also undisputed that Ms. Numbers made comments to Ms. Edmonds about the number of times that she was going to go to the doctor and need medical leave. The district court improperly dismissed Ms. Edmonds' direct evidence, which clearly put Numbers' intent as the decision maker to eliminate Edmonds' physician in question. In doing so, the district court focused on Angelie's reorganization. Which leads me to my second point, which is that the undisputed evidence also shows that Ms. Edmonds' physician was not going to be eliminated due to any reorganization prior to her submitting her FMLA request in November of 2012. Specifically, as of September 2012, Angelie's representative advised that there had been a determination for elimination of physicians. And that they had decided to eliminate nine physicians within IRG, which was the branch that Ms. Edmonds was in. Ms. Edmonds' physician was not in that determination for elimination. He also advised that anyone that was invited to review a possible voluntary separation package were people that their positions were not identified for elimination. And there were no current plans to eliminate their position. This also corroborates Ms. Edmonds' testimony that she was advised that her position was not going to be eliminated. What's the time of that? That's in September of 2012. October of 2012, there is a memo that goes showing that there is no determination to eliminate Ms. Edmonds' physician. And that the duties are going to be assigned specifically to Ms. Edmonds and also her backup. And the physician that would be eliminated sort of in the accounting branch is going to be Ms. Faison. It's not until November of 2012, the following month, Ms. Edmonds submits her request for FMLA leave, which spans the time of December 20th, 2012 through April 11th, 2013. And then December 20th, she leaves to go out on leave. Ms. Edmonds testified she was the one who made the determination to eliminate her position due to the alleged changed accounting system. Even so, in February of 2013, Ms. Edmonds was advised that her request for FMLA was approved and granted. Do you object to that? April 11th. No, I'm saying that she is saying that she made the decision to eliminate her position in January. In February, Ms. Edmonds is receiving notification that her FMLA request has been approved through March. The fact is that the last point I want to make is that there are material facts in dispute regarding the real organization and the elimination of Ms. Edmonds' position. That there was the fact that they're saying that they decided to eliminate her position based on the changed accounting system and advertised for a job accountant position. There are questions in dispute, material facts in dispute, regarding that position and the duties of that position. Ms. Edmonds testified she made the determination, and then she stated that the position that she is seeking to fill, the person must have a bachelor's. Ms. Edmonds does not have a bachelor's degree. And the basis for that reason that Ms. Nemers identified is inconsistent and it doesn't support what she stated in the job announcement. She also was requiring a bachelor's degree in accounting. The person that was hired to fill the position, Ms. Curran, has no degree in accounting. There's a dispute over the duties being similar and dissimilar in terms of what Ms. Edmonds was responsible for and what the new position was responsible for as well. In light of the undisputed facts of direct evidence. I thought there was no dispute that Ms. Curran was doing cost accounting. Is there a dispute on that? There is no dispute that Ms. Curran was doing cost accounting. And there's no claim that Ms. Edmonds had done cost accounting? She had not done cost accounting. That is correct. But there were substantial duties that were similar. And the fact that she was told. The overlap of duties doesn't really get you very far, does it? That's true. I agree, Judge. But the fact is that she was told the position was eliminated for certain reasons that are questionable. There is definitely enough evidence in undisputed facts that would create at least an inference of pretext or prohibited bias in terms of the decision maker and the determination. In terms of the position duties and in terms of the testimony, there is inconsistent testimony in terms of that. And that should go to the jury. And that is the reasons why the district court's decision should be reversed. Any questions? No. Good morning. Mike Murphy on behalf of the Apple Lead. I'll move this up a little bit. Judge Williams, I think you hit the nail on the head. In January of 2013, Agility is a new company. They are changing the infrastructure in which this company operates, and they are changing accounting systems. And IRG, which is where Ms. Nemers was operating, which was a business unit in this new company, was encountering substantial accounting problems because Agility had converted from one accounting system to a new accounting system. Ms. Nemers, in the old accounting system, had put controls in place to make sure that employees would be able to properly record their time. When Agility migrated to the new system, Uninet, all those controls were eliminated. Ms. Nemers concluded that she needed somebody with experience in job costing accounting, which means somebody who could go into the system, basically like a computer programmer, and create controls that Nemers herself had done in the prior system. Nemers didn't have time to do it. Also, Agility had eliminated over 300 positions across the entire enterprise, 14 of those positions in IRG, including the payroll supervisor, the accounting supervisor. So Ms. Nemers needed more resources, more skills to address this very significant accounting problem which was being generated by this new system. Crystal Kern was that person. Crystal Kern had spent 10 years in job costing accounting. It's undisputed, she was deposed, that one of her major functions was going into the Uninet system and establishing these missing controls. Ms. Kern testified without contradiction that that was an extensive process that she was, her term, hard-coding the system. Ms. Edmonds testified that she had never done that type of work. She was not an administrator. She did not have administrative rights. When you look at her declaration, which was submitted in opposition to the motion for summary judgment, you'll see that she was not in that role. She was not functioning. That was the primary purpose that Ms. Nemers concluded, that she needed somebody with a different skill set. And that decision was made after all these accounting issues arose in January of 2013. There was major sea change happening. As I said, this is a brand new company. There's no dispute. If you look at the contemporaneous correspondence from the HR person who contacted Ms. Edmonds in the email, which is in the record, Ms. Shelly Nixon specifically said, this is because our systems have changed. We've had to eliminate your position because we need a new skill set, a more sophisticated advanced skill set to carry on the business. It was a legitimate, non-discriminatory, non-retaliatory reason. And Ms. Edmonds did not come back with record evidence to create a genuine dispute of material fact for trial. In terms of the comment that was made, as the record reflects, there was a conversation in April of 2012. This is before Agility stands up. This is before Agility actually is making all these changes. The circumstances are changing from April 2012 to January 2013. And counsel pointed out a timeline and saying in September there was some assurances given that Ms. Edmonds' position was safe. Well, that's before Agility rolled out this new accounting system in January. So circumstances were changing. In fact, the record reflects nobody was guaranteed a safe position. People were being notified of layoffs. Ms. Edmonds herself was given a voluntary exit package, which she declined. That was in the November timeframe and before the new accounting system went into place. But in terms of the comment, the comment was in an exchange in April of 2012, again, well before the infrastructure change. And the comment was a conversation that was initiated by Ms. Edmonds herself in which she and Ms. Nemers were talking about their two sons who were getting ready to go off to college. And Ms. Edmonds disclosed to Ms. Nemers that she was pregnant and she said, I'm going to be dealing with children for the rest of my life. And Ms. Nemers said, how many children are you going to have? So the context is not sort of invidious. It was that Ms. Edmonds was sort of commenting upon, I have a kid going off to college and I'm about to have a baby. Interestingly, it's later in November that Ms. Edmonds says that she spoke to Ms. Nemers about her, should she take the package? Should she take this voluntary separation package? And Ms. Edmonds says that Ms. Nemers said, I don't think you need to do it. And so she doesn't. So she relies on Ms. Nemers to sort of make a decision, I'm going to stay put. But if Nemers had sort of this bias, if Nemers knew that she was pregnant, it would seem to me that Ms. Nemers would say, take the package. That would be, if somebody had sort of invidious discrimination in their mind, the cleanest way to sort of address an issue like that is to take the package. She didn't. There was no bias in Ms. Nemers. And in January when she makes these decisions, she's making decisions looking at what the business needs, what the operation needs. And in fact, as the record reflects, the entire department, the entire accounting department at IRG was eliminated by Agility. And Ms. Nemers herself was laid off. So that entire function was eliminated and moved to Chantilly, which is where Agility's headquarters are. And as Judge Cooper finds, many of these decisions are being made outside of Ms. Nemers' control. These are coming from the leadership within Agility. They were the ones who decided on a new accounting system. They are the ones who decided that there needed to be this restructuring. They are the ones who decided that the function, the accounting function at IRG was going to be eliminated. And the new company in Chantilly, that payroll department in Chantilly and New Jersey was going to take over these payroll functions. Was Ms. Nemers the decision maker in terms of eliminating Ms. Edmunds' job? Yes, she was the one who proposed that they make these changes to deal with these accounting problems. And she testified to that. She said she was the decision maker. And she explained the decisions were because as of January 2013, as the record reflects, and Ms. Edmunds doesn't dispute. They had massive problems. They could not get their bills out because the employees were not able to code correctly into the system, the programs to which they were billing, the programs that they were on. And Ms. Nemers testified again without contradiction that the reason that was happening is that Jilly had wiped out the controls that were in this prior system called Deltek. And so Nemers needed somebody sophisticated who had the experience to go back into the system and create all these controls that were missing. You said Edmunds conceded that she couldn't? In her declaration, when you read it carefully, there's a, in the record, there's a job description for purposes of, Your Honor, if I can get it? So Appendix, Joint Appendix 96. The job description for a job costing accountant specifically includes, this is I'm quoting, review in parentheses scrub accounts and ensure accounts are allocated and mapped to appropriate cost pools. And what Nemers described was that means you're going to go into the system and you're going to create these controls. And so in her testimony, there's a question. I asked her, so there could be a difference between problems and questions that you answered versus cost accounting problems and questions. And she said, yeah, maybe. And then when you look at her declaration, when she goes into what she did, she doesn't describe actually being a system administrator. She says she was fixing a problem here, fixing a problem there. It wasn't creating controls, which are very different. But she didn't concede she couldn't do it. Well, Your Honor, I think a fair reading of the record would be a concession from my point of view. Well, you're just describing what she did, which you say is different from what was required. That's different from telling us whether she could do what was now required. She may have been doing something that was different from what was- Fair enough, Your Honor. That's a fair point. She describes it, Appendix 245. This is her declaration. She describes what she did in terms of her payroll duties. And she says she's reviewing-I reviewed employee timesheets to ensure org numbers, project account numbers, vacation and six codes, and other charge codes were accurate in DelTec time and expense and cost point. She reviewed them. Right. It doesn't say that she actually manipulated them. Yeah, but there's nothing to indicate whether she could do what was now required. Well, all that had been done by-remember, there was an organizational structure. You had members who was the controller. Then you actually had a manager, a supervisor. None of those functions were performed. The testimony reflects none of those functions. The control functions were performed by Edmonds. Members are self-testified. She was the one who actually created the controls in DelTec. That's undisputed. So in terms of a concession, the record reflects members is the one who created the controls, not Edmonds. I don't think there's any dispute that when you look at the record, that there was a whole significant amount of operational-sorry, I'm out of time. Thank you. Is there any place in the record where Ms. Nemers claims capacity to do this creation of controls? Where Ms. Nemers? I'm sorry. Ms. Edmonds. Well, no. She does not. She never asserts capacity to do that. Well, no. Ms. Edmonds never was able to return to work to do any of these new, I guess- No, no. Is she claiming anywhere that she could have done it? I believe she testified that she could have been trained on it. Could have been trained. Right. Right. Had she done it before? No. But one of the things that I wanted to point out was that in Ms. Nemers' testimony, when asking about what she was looking for for a person to fill the position, she testified that she was focusing on the accounting side of work, and Ms. Curran's last position was a program potential analyst, where she worked with third-party payroll systems, and she stated that this was one of the unique instances that she really wanted in a potential candidate. However, Ms. Edmonds had the same experience of working with a third-party payroll processor, which is at the Joint Appendix 245 and 246. And so, I just want to comment really quickly on the comment. In terms of the comment that Ms. Nemers made regarding her pregnancy and medical leave, those comments were made not in, I guess, a jovial way. I mean, Ms. Edmonds testified that she thought it wasn't friendly, that she immediately didn't want to talk anymore about it, and she didn't say congratulations or anything of a good-spirited type of conversation or exchange. Raising kids for the rest of your life was never a friendly thought. It's true. But in terms of the comments made, I think that they are important comments in terms of also the fact that Ms. Nemers has stated that it was stressful and there was a lot of work that a reasonable juror could conclude that her medical leave and her consideration that she was going to need to take time off for her newborn or would not be at work every day could have been a factor, considering that she wanted someone that did not have that, had not engaged in that protected activity and was going to be someone that was going to report to work every day. And also, the last point I wanted to make was that ANGILITY was formed in July of 2012. It wasn't just a recent January formation where they just realized at that point in time there were issues. Yeah, what about the change of accounting system? Right. That seems to be the driving force. That's true, Judge. However, ANGILITY acknowledged that change of accounting system back in the October timeframe when it wrote in a memo regarding ANGILITY's moving and changing of accounting systems, and it knew that those changes were going to be taking place. And in that decision, it had not made the determination to eliminate its position. But it hadn't seen the results of the switch. Right? Any evidence that saw the results of the switch back in November? No, there's no evidence that saw the results of the switch yet. Thank you. Thanks.
judges: Brown, Edwards, Williams